JEFFREY L. FILLERUP (SBN 120543)
jfillerup@rinconlawllp.com
CHARLES P. MAHER (SBN 124748)
cmaher@rinconlawllp.com
RINCON LAW LLP
268 Bush St. #3335
San Francisco, California 94104
Telephone: (415) 996-8199
Facsimile: (415) 680-1712

Attorneys for Plaintiff Marlene G.
Weinstein, Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>INDEPENDENT ADOPTION CENTER,<br><br>Debtor. | Case No. 17-40327 RLE<br>Chapter 7<br>Hon. Roger L. Efremsky |
| MARLENE G. WEINSTEIN, Trustee,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY S. KUHL, SUSAN SPARLING, ALEX KAPLAN, NANCY WORRELL, DAN WARD, WILLIAM KINNANE, CHRISTINE ZWERLING, MARCIA HODGES, and NAVIGATORS INSURANCE COMPANY, a New York corporation,<br><br>Defendants. | Adversary Proceeding No.<br><br>**COMPLAINT** |

For her Complaint, Plaintiff Marlene G. Weinstein, Chapter 7 Trustee of the estate of the above-referenced Debtor, alleges as follows:

1. On February 3, 2017 (the "Petition Date"), Independent Adoption Center, a California nonprofit corporation, California Secretary of State registration number C1126599 (the "Debtor", filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the

"Petition").

2. Plaintiff Marlene G. Weinstein was appointed and is serving as the Chapter 7 Trustee (the "Trustee") of the Debtor's estate (the "Estate").

## I. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this Adversary Proceeding, which is a core proceeding, pursuant to 28 U.S.C. § 151 and 28 U.S.C. § 157(b)(2)(A), (B), an (O).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

5. The Trustee consents to the entry of a final judgment by the Bankruptcy Court in this case, irrespective of whether this is a core proceeding.

## II. THE DEFENDANTS

6. Defendant Gregory S. Kuhl was a member of the Board of Directors of the Debtor (the "Board") on the Petition Date, he served as the President of the Board prior to the Petition Date, and he had served as a Board member on-and-off for 20 years prior to the Petition Date. Defendant Kuhl was a Board member for at least one year prior to the Petition Date.

7. Defendant Susan Sparling was a member of the Board of Directors of the Debtor on the Petition Date, and she had served as a Board member on-and-off during the 15-year period prior to the Petition Date. Defendant Sparling was a Board member for at least one year prior to the Petition Date.

8. Defendant Alex Kaplan was a member of the Board of Directors of the Debtor on the Petition Date, and he had served as a Board member for more than 2 years prior to the Petition Date.

9. Defendant Nancy Worrell was a member of the Board of Directors of the Debtor on the Petition Date, and she had served as a Board member for approximately 4 years prior to the Petition Date.

10. Defendant Dan Ward was a member of the Board of Directors of the Debtor on the Petition Date, and he had served as a Board member for approximately 3 years before the Petition Date.

11. Defendant William Kinnane was a member of the Board of Directors of the Debtor

on the Petition Date, he had served as a Board member for approximately one year prior to the Petition Date, and he had served on-and-off as a Board member during the ten-year period prior to the Petition Date.

12. Defendant Christine Zwerling served on the Board of Directors of the Debtor on the Petition Date, and she had served as a Board member for approximately 3 years before the Petition Date.

13. Defendants Kuhl, Sparling, Kaplan, Worrell, Ward, Kinnane, and Zwerling are referred to collectively herein as the "Director Defendants".

14. Defendant Marcia Hodges was the interim Executive Director of the Debtor on the Petition Date, and she had served as the interim Executive Director of the Debtor continuously from March, 2016 until the Petition Date.

15. Defendant Hodges is referred to herein as the "Officer Defendant."

16. Defendant Navigators Insurance Company is New York corporation registered to conduct business in the State of California, California Secretary of State registration number C1199526 ("Navigators"). Navigators issued a Directors & Officers Liability insurance policy, policy no. NY16DOLV02898NV, with a policy period from March 24, 2016 through March 24, 2017 (the "D&O Policy").

17. The allegations herein directed against the Director Defendants and the Officer Defendant are covered by the D&O Policy.

### III.  BACKGROUND FACTS

18. The Debtor was a nonprofit public benefit corporation formed and organized in October, 1982 under the California Nonprofit Public Benefit Corporation Law, California Corporations Code §§ 5110 et seq.

19. The Debtor was formed and organized for the purpose of providing adoption services to adopting parents, including locating children to be adopted, providing counseling to adopting parents, and assisting adopting parents with the adoption process.

20. In September, 1996, the Internal Revenue Service issued a determination letter to the Debtor recognizing the Debtor as exempt under section 501(c)(3) of the Internal Revenue Code.

21. The Debtor continued to provide adoption services until it closed its doors on January 31, 2017 and filed the Petition on February 3, 2017.

22. During the course of its operations and continuing until the Petition Date, the Debtor was subject to operating according to its Bylaws, the California Nonprofit Public Benefit Corporation Law, the Internal Revenue Code, and the laws and regulations covering adoptions in the states in which the Debtor operated.

23. The Debtor's Bylaws (the "Bylaws") provide that "[t]he members of the corporation shall consist of the members of the Board of Directors…." and "[t]he business and property of the corporation shall be managed by a Board of Directors…."

24. The Bylaws also provide that "Board Members shall: (a) Be accountable to the community for adequate services to the persons being served by the Center… (d) exercise trusteeship for the property and investments. (e) Approve the budget and be responsible for the administration and employment of other staff members…."

25. The Bylaws also provide that "[a]ll the corporate powers, except such as are otherwise provided for in these bylaws and in the laws of the State of California, shall be and are hereby vested in and shall be exercised by the Board of Directors."

26. The Bylaws also provide that the "Directors shall not receive any stated salary for their services as such, but by resolution of the Board a reasonable sum for expenses of attendance, if any or both, may be allowed for attendance at each regular or special meeting of the Board."

27. The Bylaws also provide that the Board of Directors shall elect officers of the corporation.

28. The Director Defendants elected Marci Hodges to act as the interim Executive Director of the Debtor in or about March, 2016.

29. Prior to the Petition Date, the Director Defendants and the Officer Defendant oversaw and were responsible for the Debtor's provision of adoption services.

30. Prior to the Petition Date, the Debtor operated adoption centers from nine office locations in seven states: California, Connecticut, Florida, Indiana, New York, North Carolina, and Texas.

31.     The Debtor provided private full-service adoption services that included, among other things: (a) entering into contracts with birth parents for the relinquishment of their biological children for purposes of adoption; (b) entering into contracts with adopting parents to locate and aid in the adoption of a child by the adopting parents; and (c) agreeing to provide, in many cases, lifetime counseling services to adopting parents.

32.     The Debtor's normal practice was to enter into a contract with the adopting parents that required the adopting parents to pay the Debtor upfront fees that were generally in the range of $15,000 or more, and based on a sliding scale.

33.     In exchange for the upfront fees, the Debtor would search for a child that could be adopted, aid in the adoption process, and, in many cases, provide lifetime counseling to the adopting parents.

34.     The Debtor's model of operation depended on the formation of new contracts with adopting parents, referred to as "new signs", and the current income that would be generated for the Debtor from the new contracts.

35.     The Debtor's model of operation also depended on the availability of birth mothers because a lack of birth mothers would impair the Debtor's ability to perform on the contracts with adopting parents.

36.     Sometime in or before 2016, the Debtor's model of operation was disrupted by a decline in the availability of birth mothers and a decline in the number of new signs.

37.     This disruption lead to a financial crisis that demanded that the Director Defendants and Officer Defendant take action.

38.     The financial crisis was brought about by a confluence of events, including, but not limited to: the Debtor experienced increasing difficulty in locating birth mothers; the time period for the location of a baby for adopting parents was extended; the number of new signs decreased; the Debtor's overhead costs rose; adopting parents complained that the Debtor was not providing the services promised in the contracts signed by adopting parents; the Debtor relied on financial reserves to pay current expenses; the Debtor was losing money every month; there was no turn-around in sight; and the Debtor had insufficient assets to weather on-going monthly losses without

significant changes in its operations.

39. In 2016, the Debtor had obligations to hundreds of adopting parents who had already paid for adoption services from the Debtor, but who had not been provided with a child to be adopted.

40. In 2016, the Debtor had on-going, future obligations to hundreds of adopting parents who had previously been provided a child for adoption and who had adopted a child.

41. In 2016, the Debtor continued to seek and accept upfront fees from new signs.

42. In 2016, the Director Defendants and the Officer Defendant knew or should have known that the Debtor could not perform its outstanding obligations to adopting parents who had already paid the Debtor for adoption services.

43. On January 26, 2017, the Director Defendants decided that the Debtor would close its doors in all locations on January 31, 2017 and that the Debtor would file the Petition on February 3, 2017.

44. As of January 31, 2017, there were hundreds of adopting parents who had paid the Debtor for adoption services and had not yet been able to adopt a child because the Debtor had not located a child for them. In many cases, the adopting parents had been waiting for years for the Debtor to locate a child for them to adopt.

45. In the bankruptcy case, as of the date this Complaint was filed, more than 100 adopting parents have already filed claims seeking, among other things, a refund of the money that they had paid the Debtor for the Debtor to locate a child for adoption.

46. The Debtor did not give adopting parents advance notice of the Debtor's closure.

47. The Debtor did not give government regulators advance notice of the Debtor's closure.

48. The states in which the Debtor operated regulated the closure of a private adoption services and the handling of confidential adoption records.

49. The Director Defendants and the Officer Defendant did not take steps to deal with the confidential adoption records in the Debtor's possession on the Petition Date.

50. The Director Defendants and the Officer Defendant were not knowledgeable about

the laws and regulations governing the closure of the Debtor's operations on the Petition Date.

51. The Director Defendants and the Officer Defendant caused the Debtor to close its doors and shut down operations abruptly and without seeking to comply with the applicable laws and regulations in the states in which the Debtor operated.

52. In shutting its doors and discontinuing its operations, the Director Defendants and the Officer Defendant left to the Trustee the task of complying with government regulations relating to the closure of adoption services and the handling of confidential adoption records.

53. The California Department of Social Services filed a brief in the bankruptcy case stating: "… on the information and belief … the owners of IAC [the Debtor] and Board of Governors ("Board") have violated California laws and regulations governing adoptions, including but not limited to laws and regulations governing the licensing and financial management of adoption agencies."

54. In shutting its doors and discontinuing its operations, the Debtor left to the Trustee the task of dealing with the claims, demands, and requests from adopting parents who had paid for adoption services in advance but had not received a child for adoption.

55. The Trustee has been required to incur significant costs, including the employment of attorneys and accountants, in order for the Trustee to undertake and complete the task of dealing with government regulations, regulatory officials, adopting parents, other creditors, and adoption files, caused by the Debtor's abrupt closure and bankruptcy filing.

**FIRST CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty Against the Director Defendants and Navigators)**

56. The Trustee incorporates in this Claim for Relief the prior allegations in this Complaint.

57. Prior to the Petition Date, the Director Defendants owed the Debtor a fiduciary duty.

58. Prior to the Petition Date, the Director Defendants owed the adopting parents a fiduciary duty, including during the time that the Debtor was insolvent.

59. Prior to the Petition Date and during the time that the Debtor was insolvent, the Director Defendants owed the other creditors of the Debtor a fiduciary duty.

60. The fiduciary duties owed by the Director Defendants included duties arising from the Debtor's Bylaws and duties of loyalty, care and good faith under California law.

61. The Director Defendants breached their fiduciary duties because they: (a) failed to properly identify, monitor, and account for the Debtor's liabilities; (b) failed to ensure the on-going good name and reputation of the Debtor in the eyes of prospective birth mothers and adopting parents; (c) failed to ensure the on-going good name and reputation of the Debtor in the eyes of regulators in California; (d) failed to take necessary action when the increasing differential between new contracts and availability of birth mothers became impossible to reverse; (e) failed to take action to refund advances paid by adopting parents when it was clear the Debtor would not continue to fulfill obligations to adopting parents; (f) failed to recognize and take action in 2016 when it was clear that the Debtor's status quo would not reverse; (g) failed to find options for fulfilling the Debtor's obligations under contracts with adopting parents; (h) failed to take steps to cut overhead expenses in order to fulfill obligations to adopting parents; (i) failed to perceive the financial significance of the downturn in new contracts in 2015 and 2016; (j) failed to use the Debtor's assets to make refunds to adopting parents or locate other services to fulfill obligations to adopting parents; (k) failed to prepare for the orderly transition of files to government officials; (l) failed to leave sufficient assets for government officials to take over the role that should have been served by the Debtor; (m) failed to take steps via a Chapter 11 filing or other alternative to fulfill the obligations of the Debtor to adopting parents and government regulators; (n) failed to timely acknowledge that the Debtor was facing a financial crises that threatened the existence of the Debtor; (o) failed to call and conduct Board and management meetings for the purpose of identifying the financial crisis of the Debtor and taking action to solve the crisis; (p) failed to document with minutes, notes, and emails, the efforts made to resolve the Debtor's financial crisis; (q) failed to identify and fulfill the Debtor's outstanding obligations to hundreds of adopting parents; (r) failed to quantify in financial statements, internal reports, or otherwise, the true measure of outstanding obligations that the Debtor owed to adopting parents and other creditors; (s) failed to properly plan and budget for future operations in light of the Debtor's financial circumstances in 2015 and 2016; (t) failed to properly transition to a new Executive Director to oversee the Debtor

in 2016; (u) failed to coordinate the closure of the Debtor with governmental officials that regulated the Debtor's operations; (v) failed to take action in response to the losses reported in the audited financial statements for the year ending December 31, 2015; (w) failed to adequately respond to complaints from adopting parents in 2015 and 2016; (x) failed to provide earlier notice to adopting parents that the Debtor would not fulfill its obligations; (y) failed to take steps in 2016 to ensure the on-going viability of the Debtor; (z) failed to take steps in 2016 to minimize the financial and emotional hardship to adopting parents; (aa) failed to comply with obligation under Article IV(12)(a) of the Bylaws that requires Board members to be accountable to the community for adequate services to adopting parents; and (ab) failed to comply with obligations under Article IV(12)(d) of the Bylaws to exercise trusteeship of property and investments of the Debtor.

62. The Trustee has standing to assert the claims for breach of fiduciary duty alleged in this First Claim for Relief.

63. As a direct and proximate result of the breaches of fiduciary duty herein, the Debtor and creditors have been damaged in an amount to be determined at the time of trial.

64. Navigators is obligated to pay the damages awarded in this First Claim for Relief pursuant to the terms of the D&O Policy and California Corporations Code § 5239.

**SECOND CLAIM FOR RELIEF**
**(Negligence Against the Director Defendants and Navigators)**

65. The Trustee incorporates in this Claim for Relief the prior allegations in this Complaint.

66. Prior to the Petition Date, the Director Defendants owed the Debtor an obligation to carry out their directorship duties with such care as an ordinary person in a like position would use under similar circumstances.

67. The Director Defendants breached their duties to the Debtor because they: (a) failed to properly identify, monitor, and account for the Debtor's liabilities; (b) failed to ensure the on-going good name and reputation of the Debtor in the eyes of prospective birth mothers and adopting parents; (c) failed to ensure the on-going good name and reputation of the Debtor in the eyes of regulators in California; (d) failed to take necessary action when the increasing differential between

new contracts and availability of birth mothers became impossible to reverse; (e) failed to take action to refund advances paid by adopting parents when it was clear the Debtor would not continue to fulfill obligations to adopting parents; (f) failed to recognize and take action in 2016 when it was clear that the Debtor's status quo would not reverse; (g) failed to find options for fulfilling the Debtor's obligations under contracts with adopting parents; (h) failed to take steps to cut overhead expenses in order to fulfill obligations to adopting parents; (i) failed to perceive the financial significance of the downturn in new contracts in 2015 and 2016; (j) failed to use the Debtor's assets make refunds to adopting parents or locate other services to fulfill obligations to adopting parents; (k) failed to prepare for the orderly transition of files to government officials; (l) failed to leave sufficient assets for government officials to take over the role that should have been served by the Debtor; (m) failed to take steps via a Chapter 11 filing or other alternative to fulfill the obligations of the Debtor to adopting parents and government officials; (n) failed to timely acknowledge that the Debtor was facing a financial crisis that threatened the existence of the Debtor; (o) failed to call and conduct Board and management meetings for the purpose of identifying the financial crises of the Debtor and taking action to solve the crisis; (p) failed to document with minutes, notes, and emails, the efforts made to resolve the Debtor's financial crisis; (q) failed to identify and fulfill the Debtor's outstanding obligations to hundreds of adopting parents; (r) failed to quantify in financial statements, internal reports, or otherwise, the true measure of outstanding obligations that the Debtor owed to adopting parents and other creditors; (s) failed to properly plan and budget for future operations in light of the Debtor's financial circumstances in 2015 and 2016; (t) failed to properly transition to a new Executive Director to oversee the Debtor in 2016; (u) failed to coordinate the closure of the Debtor with governmental officials that regulated the Debtor's operations; (v) failed to take action in response to the losses reported in the audited financial statements for the year ending December 31, 2015; (w) failed to adequately respond to complaints from adopting parents in 2015 and 2016; (x) failed to provide earlier notice to adopting parents that the Debtor would not fulfill its obligations; (y) failed to take steps in 2016 to ensure the on-going viability of the Debtor; (z) failed to take steps in 2016 to minimize the financial and emotional hardship to adopting parents; (aa) failed to comply with obligation under Article IV(12)(a) of the

Bylaws that requires Board members to be accountable to the community for adequate services to adopting parents; and (ab) failed to comply with obligations under Article IV(12)(d) of the Bylaws to exercise trusteeship of property and investments of the Debtor.

68. As a direct and proximate result of the Director Defendants' negligence, the Debtor and creditors have been damaged in an amount to be determined at the time of trial.

69. Navigators is obligated to pay the damages awarded in this Second Claim for Relief pursuant to the terms of the D&O Policy and California Corporations Code § 5239.

## THIRD CLAIM FOR RELIEF
### (Declaratory Relief Against the Director Defendants and Navigators)

70. The Trustee incorporates in this Claim for Relief the prior allegations in this Complaint.

71. California Corporations Code Section 5239 provides that there shall be no personal liability to a volunteer director of a nonprofit corporation for monetary damages caused by the director's act or omission in the performance of that person's duties as a director if (a) the act or omission is within the scope of the director's duties; (b) the act or omission was performed in good faith; (c) the act or omission was not reckless, wanton, intentional or grossly negligent; and (d) the damages caused by the act or omission are covered by a director's and officer's liability insurance policy.

72. The Trustee is informed and believes that the Director Defendants will contend that they are protected from personal liability under the provisions in Section 5239.

73. The D&O Policy is the type of insurance policy referred to in Section 5239.

74. The Trustee contends that the claims alleged in the First Claim for Relief and the Second Claim for Relief herein are covered under the terms of the D&O Policy.

75. The Trustee seeks a declaratory judgment that Navigators is obligated to pay the damages awarded to the Trustee in the First Claim for Relief and the Second Claim for Relief pursuant to the terms of the D&O Policy and California Corporations Code § 5239.

///

///

# FOURTH CLAIM FOR RELIEF
(Breach of Fiduciary Duty Against the Officer Defendant)

76. The Trustee incorporates in this Claim for Relief the prior allegations in this Complaint.

77. Prior to the Petition Date, the Officer Defendant owed the Debtor a fiduciary duty.

78. Prior to the Petition Date, the Officer Defendant owed the adopting parents a fiduciary duty, including during the time that the Debtor was insolvent.

79. Prior to the Petition Date and during the time that the Debtor was insolvent, the Officer Defendant owed the other creditors of the Debtor a fiduciary duty.

80. The fiduciary duties owed by the Officer Defendant included duties arising from the Debtor's Bylaws and duties of loyalty, care and good faith under California law.

81. The Officer Defendant has breached her fiduciary duties because she: (a) failed to properly identify, monitor, and account for the Debtor's liabilities; (b) failed to ensure the on-going good name and reputation of the Debtor in the eyes of prospective birth mothers and adopting parents; (c) failed to ensure the on-going good name and reputation of the Debtor in the eyes of regulators in California; (d) failed to take necessary action when the increasing differential between new contracts and availability of birth mothers became impossible to reverse; (e) failed to take action to refund advances paid by adopting parents when it was clear the Debtor would not continue to fulfill obligations to adopting parents; (f) failed to recognize and take action in 2016 when it was clear that the Debtor's status quo would not reverse; (g) failed to recommend that the Board take action in 2016 when it was clear that the Debtor's status quo would not reverse; (h) failed to find options for fulfilling the Debtor's obligations under contracts with adopting parents; (i) failed to recommend options to the Board to fulfill obligations to adopting parents; (j) failed to take steps to cut overhead expenses in order to fulfill obligations to adopting parents; (k) failed to recommend options to the Board to cut overhead expenses; (l) failed to perceive the financial significance of the downturn in new contracts in 2016; (m) failed to recommend options to the Board to deal with the downturn in the number of new contracts in 2016; (n) failed to use assets to pay refunds to adopting parents or locate other services to fulfill obligations to adopting parents; (o) failed to

recommend to the Board the use of the Debtor's assets to pay refunds to adopting parents; (p) failed to prepare for the orderly transition of files to government officials; (q) failed to identify obligations due to government regulators when the Debtor closed its doors; (r) failed to recommend to the Board actions that should be taken to comply with obligations to government regulators before the Debtor closed its doors; (s) failed to recommend that the Board leave sufficient assets for government officials to take over the role that should have been served by the Debtor when the Debtor closed its doors; (t) failed to investigate and recommend other steps, such as a Chapter 11 filing, to the Board in order to fulfill the obligations of the Debtor to adopting parents; (u) failed to timely acknowledge that the Debtor was facing a financial crisis that threatened the existence of the Debtor; (v) failed to timely inform the Board that the Debtor that the Debtor was facing a financial crisis; (w) failed to call Board and management meetings for the purpose of identifying the financial crisis of the Debtor and taking action to solve the crisis; (x) failed to document with minutes, notes, and emails, the efforts made to resolve the Debtor's financial crisis; (y) failed to identify and fulfill the Debtor's outstanding obligations to hundreds of adopting parents; (z) failed to recommend that the Board fulfill the Debtor's obligations to hundreds of adopting parents; (aa) failed to quantify in financial statements, internal reports, or otherwise, the true measure of outstanding obligations that the Debtor owed to adopting parents; (ab) failed to inform the Board of the true measure of outstanding obligations that the Debtor owed to adopting parents; (ac) failed to properly plan and budget for future operations in light of the Debtor's financial circumstances in 2016; (ad) failed to coordinate the closure of the Debtor with governmental officials that regulated the Debtor's operations; (ae) failed to take action in response to the losses reported in the audited financial statements for the year ending December 31, 2015; (af) failed to adequately respond to complaints from adopting parents in 2015 and 2016; (ag) failed to provide earlier notice to adopting parents that the Debtor would not fulfill its obligations; (ah) failed to take steps in 2016 to ensure the on-going viability of the Debtor; and (ai) failed to take steps in 2016 to minimize the financial and emotional hardship to adopting parents.

82. The Trustee has standing to assert the claims for breach of fiduciary duty alleged in this Fourth Claim for Relief.

83. As a direct and proximate result of the breaches of fiduciary duty alleged herein, the Debtor and creditors have been damaged in an amount to be determined at the time of trial.

**FIFTH CLAIM FOR RELIEF**
**(Negligence Against the Officer Defendant)**

84. The Trustee incorporates in this Claim for Relief the prior allegations in this Complaint.

85. Prior to the Petition Date, the Officer Defendant owed the Debtor an obligation to carry out her officership duties with such care as an ordinary person in a like position would use under similar circumstances.

86. The Officer Defendant breached her duties to the Debtor because she:(a) failed to properly identify, monitor, and account for the Debtor's liabilities; (b) failed to ensure the on-going good name and reputation of the Debtor in the eyes of prospective birth mothers and adopting parents; (c) failed to ensure the on-going good name and reputation of the Debtor in the eyes of regulators in California; (d) failed to take necessary action when the increasing differential between new contracts and availability of birth mothers became impossible to reverse; (e) failed to take action to refund advances paid by adopting parents when it was clear the Debtor would not continue to fulfill obligations to adopting parents; (f) failed to recognize and take action in 2016 when it was clear that the Debtor's status quo would not reverse; (g) failed to recommend that the Board take action in 2016 when it was clear that the Debtor's status quo would not reverse; (h) failed to find options for fulfilling the Debtor's obligations under contracts with adopting parents; (i) failed to recommend options to the Board to fulfill obligations to adopting parents; (j) failed to take steps to cut overhead expenses in order to fulfill obligations to adopting parents; (k) failed to recommend options to the Board to cut overhead expenses; (l) failed to perceive the financial significance of the downturn in new contracts in 2016; (m) mailed to recommend options to the Board to deal with the downturn in the number of new contracts in 2016; (n) failed to use assets to pay refunds to adopting parents or locate other services to fulfill obligations to adopting parents; (o) failed to recommend to the Board the use of the Debtor's assets to pay refunds to adopting parents; (p) failed to prepare for the orderly transition of files to government officials; (q) failed to identify obligations

due to government regulators when the Debtor closed its doors; (r) failed to recommend to the Board actions that should be taken to comply with obligations to government regulators before the Debtor closed its doors; (s) failed to recommend that the Board leave sufficient assets for government officials to take over the role that should have been served by the Debtor when the Debtor closed its doors; (t) failed to investigate and recommend other steps, such as a Chapter 11 filing, to the Board in order to fulfill the obligations of the Debtor to adopting parents; (u) failed to timely acknowledge that the Debtor was facing a financial crisis that threatened the existence of the Debtor; (v) failed to timely inform the Board that the Debtor that the Debtor was facing a financial crisis; (w) failed to call Board and management meetings for the purpose of identifying the financial crisis of the Debtor and taking action to solve the crisis; (x) failed to document with minutes, notes, and emails, the efforts made to resolve the Debtor's financial crisis; (y) failed to identify and fulfill the Debtor's outstanding obligations to hundreds of adopting parents; (z) failed to recommend that the Board fulfill the Debtor's obligations to hundreds of adopting parents; (aa) failed to quantify in financial statements, internal reports, or otherwise, the true measure of outstanding obligations that the Debtor owed to adopting parents; (ab) failed to inform the Board of the true measure of outstanding obligations that the Debtor owed to adopting parents; (ac) failed to properly plan and budget for future operations in light of the Debtor's financial circumstances in 2016; (ad) failed to coordinate the closure of the Debtor with governmental officials that regulated the Debtor's operations; (ae) failed to take action in response to the losses reported in the audited financial statements for the year ending December 31, 2015; (af) failed to adequately respond to complaints from adopting parents in 2015 and 2016; (ag) failed to provide earlier notice to adopting parents that the Debtor would not fulfill its obligations; (ah) failed to take steps in 2016 to ensure the on-going viability of the Debtor; and (ai) failed to take steps in 2016 to minimize the financial and emotional hardship to adopting parents.

87. As a direct and proximate result of the Officer Defendant's negligence, the Debtor and creditors have been damaged in an amount to be determined at the time of trial.

///

///

# PRAYER FOR RELIEF

Wherefore, the Trustee seeks a judgment in her favor and against the Defendants, as follows:

    A.    As to the First Claim for Relief and the Second Claim for Relief, an award of compensatory damages in favor of the Trustee and against Navigators;

    B.    As to the Third Claim for Relief, the entry of a declaratory judgment providing that a judgment will be entered against Navigators on the basis of the damages awarded to the Trustee on the First Claim for Relief and the Second Claim for Relief pursuant to Section 5239 of the California Corporations Code;

    C.    As to the Fourth Claim for Relief and the Fifth Claim for Relief, an award of compensatory damages in favor of the Trustee and against the Officer Defendant;

    D.    An award of the Trustee's costs and attorney's fees herein: and

    E.    Such other and further relief as the Court deems just and reasonable.

DATED: March 21, 2017            RINCON LAW LLP

By:    */s/Jeffrey L. Fillerup*
       Jeffrey L. Fillerup
       Attorneys for Plaintiff Marlene G. Weinstein,
       Chapter 7 Trustee