1   Michael W. Melendez (CSB No. 125895)
    Teri Mae Rutledge (CSB No. 261229)
2   COZEN O'CONNOR
    101 Montgomery Street, Suite 1400
3   San Francisco, CA 94104
    Tel:    415.644.0914
4   Fax:    415.644.0978
    Email:  mmelendez@cozen.com
5
    Attorneys for Defendant
6   NAVIGATORS INSURANCE COMPANY

7

8                   UNITED STATES BANKRUPTCY COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                            OAKLAND DIVISION

11  In re                                    Case No.: 17-40327 RLE
                                             Chapter 7
12  INDEPENDENT ADOPTION CENTER,             Hon. Roger L. Efremsky

13          Debtor.

14  ─────────────────────────────           Adversary Proceeding No.: 17-04020

15  MARLENE G. WEINSTEIN, Trustee,

16          Plaintiff,                       **DECLARATION OF BRIAN BEAL IN**
                                             **SUPPORT MOTION TO DISMISS OF**
16          v.                               **NAVIGATORS INSURANCE COMPANY**

17  GREGORY S. KUHL; SUSAN SPARLING;         Date:   June 15, 2017
18  ALEX KAPLAN; NANCY WORRELL;              Time:   11:00 a.m.
    DAN WARD; WILLIAM KINNANE;               Place:  Courtroom 201
19  CHRISTINE ZWERLING; MARCIA
    HODGES; and NAVIGATORS INSURANCE
20  COMPANY, a New York corporation,

21          Defendants.

22

23          I, Brian Beal, declare:

24          1.      I am Claims Counsel with Navigators Management Company, Inc. I am authorized to

25  make this declaration Navigators Insurance Company's behalf and make this declaration in support

26  of Navigators' motion to dismiss. I have personal knowledge of the matters set forth in this

27  declaration and, if called as a witness, could testify to them.

28  ///

─────────────────────────────────────────────────────────────

1       2.      Attached hereto as Exhibit A is a true and correct copy of the Navigators Insurance

2 Company Not-For-Profit InNAVation Policy issued to Independent Adoption Center for the period

3 March 24, 2016 to March 24, 2017 (Policy No. NY16DOLV02898NV).

4       I declare under penalty of perjury under the laws of the United States of America that the

5 foregoing is correct and that this declaration was signed on the 2/ day of April 2017.

6

7

8                                    Brian Beal

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 17-04020   Doc# 7   Filed: 04/21/17   Entered: 04/21/17 16:56:00   Page 2 of 37

# EXHIBIT A

# DECLARATIONS

Attached to and forming part of

## Not-For-Profit InNAVation Policy

This Insurance Is effected with

### Navigators Insurance Company

**THIS IS A CLAIMS-MADE AND REPORTED POLICY
WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY.
PLEASE READ THE ENTIRE POLICY CAREFULLY.**

ITEM 1. <u>Corporation</u> (name and address):

    Independent Adoption Center

    2300 Clayton Road
    Suite 1150
    Concord, CA 94520

ITEM 2. <u>Policy Period</u>:

    From: 03/24/2016
    To:    03/24/2017
    At 12:01 a.m. at the address shown in ITEM 1 above

IITEM 3.A. <u>Coverage Parts Issued as Part of This Policy:</u>

    ☒ DIRECTORS AND OFFICERS LIABILITY (INCLUDING ENTITY)

        ☒ Optional Additional Excess Aggregate Limit of Liability

        ☒ Optional Excess Benefit Transaction Excise Tax Coverage

    ☒ EMPLOYMENT PRACTICES LIABILITY

        ☒ Optional Third Party Coverage

        ☒ Optional Wage and Hour Coverage

        ☐ Optional HIPAA Violation Coverage

    ☐ FIDUCIARY LIABILITY

        ☐ Optional Settlement Program Coverage

IITEM 3.B. <u>Non Liability Coverage Parts Issued as Part of This Policy:</u>

    ☐ CRIME (if checked, refer to separate Declarations attached to the Crime Coverage Part )

    ☐ KIDNAP, RANSOM & EXTORSION (if checked, refer to separate Declarations attached to the
        Crime Coverage Part )

Case: 17-04020   Doc# 7   Filed: 04/21/17   Entered: 04/21/17 16:56:00   Page 4 of 37

ITEM 4. **Limits of Liability**:

    a. $1,000,000 maximum aggregate limit of liability for all **Loss**, including **Costs of Defense**, under DIRECTORS AND OFFICERS LIABILITY Coverage Part, if purchased

SUBLIMITS: If a Limit of Liability other than "$0" is shown below, the following optional coverages are provided subject to the sublimits shown below, which amounts will be part of and not in addition to the Insurer's maximum aggregate Limit of Liability for all **Loss**, including **Costs of Defense**, under this Coverage Part as set forth in Item 4. a. on the Declarations. In the event any other endorsement(s) to this Policy contain any other sublimit(s) and any other sublimit applies to any **Claim** to which the below sublimits apply, the Insurer shall not be liable to pay **Loss**, including **Costs of Defense**, resulting from such **Claim** in excess of the amount of the highest applicable sublimit.

        i. $500,000 Additional Excess Aggregate Limit of Liability Dedicated for Directors and Officers, if purchased

        II. $100,000  maximum aggregate Limit of Liability for all **Loss**, including **Costs of Defense**, for **Excess Benefit Transaction Excise Tax Claims**

    b. $1,000,000 maximum aggregate limit of liability for all **Loss**, including **Costs of Defense**, under EMPLOYMENT PRACTICES LIABILITY Coverage Part, if purchased

SUBLIMITS: If a Limit of Liability other than "$0" is shown below, the following optional coverages are provided subject to the sublimits shown below, which amounts will be part of and not in addition to the Insurer's maximum aggregate Limit of Liability for all **Loss**, including **Costs of Defense**, under this Coverage Part as set forth in Item 4. b. on the Declarations. In the event any other endorsement(s) to this Policy contain any other sublimit(s) and any other sublimit applies to any **Claim** to which the below sublimits apply, the Insurer shall not be liable to pay **Loss**, including **Costs of Defense**, resulting from such **Claim** in excess of the amount of the highest applicable sublimit.

        I. $100,000 maximum aggregate limit of liability for all **Wage and Hour Claims**

        II. N/A maximum aggregate Limit of Liability for all  **HIPAA Violation Claims**

    c. N/A maximum aggregate limit of liability for all **Loss**, including **Costs of Defense**, under FIDUCIARY LIABILITY Coverage Part, if purchased

SUBLIMITS: If a Limit of Liability other than "$0" is shown below, the following optional coverages are provided subject to the sublimits shown below, which amounts will be part of and not in addition to the Insurer's maximum aggregate Limit of Liability for all **Loss**, including **Costs of Defense**, under this Coverage Part as set forth in Item 4. c. on the Declarations. In the event any other endorsement(s) to this Policy contain any other sublimit(s) and any other sublimit applies to any **Claim** to which the below sublimits apply, the Insurer shall not be liable to pay **Loss**, including **Costs of Defense**, resulting from such **Claim** in excess of the amount of the highest applicable sublimit

        i. N/A  maximum aggregate Limit of Liability for all **Settlement Program Expenditures** under Optional Settlement Program Coverage under FIDUCIARY LIABILITY Coverage Part.

    d. $2,000,000 maximum aggregate limit of liability for all **Loss**, including **Costs of Defense**, under DIRECTORS AND OFFICERS LIABILITY Coverage Part, if purchased, EMPLOYMENT PRACTICES LIABILITY Coverage Part, if purchased, and FIDUCIARY LIABILITY Coverage Part, if purchased.

ITEM 5. **Retentions**:

   a.  Under DIRECTORS AND OFFICERS LIABILITY Coverage Part, if purchased:

       (i)  $0 each **Claim** under Insuring Agreement A

       (ii)  $25,000 each **Claim** under Insuring Agreement B

       (iii)  $25,000 each **Claim** under Insuring Agreement C

   b.  $50,000 each **Claim** under EMPLOYMENT PRACTICES LIABILITY Coverage Part, if purchased

   c.           each **Claim** under FIDUCIARY LIABILITY Coverage Part, if purchased

ITEM 6. **Prior and Pending Date**:

   a.  Under DIRECTORS AND OFFICERS LIABILITY Coverage Part, if purchased: 01/24/2003

   b.  Under EMPLOYMENT PRACTICES LIABILITY Coverage Part, if purchased: 01/24/2003

   c.  Under FIDUCIARY LIABILITY Coverage Part, if purchased: N/A

ITEM 7. **Premium**: $8,436.00

ITEM 8. **Optional Discovery Period Premium:** $6,327.00

ITEM 9. **Waiver of Recourse Premium**: N/A

ITEM 10. **Forms and Endorsements Attached at Issuance**:

    California Amendatory Endorsement NAV-NFP-300-CA (06/10)

    Sublimit Endorsement for Excess Benefit Transaction Excise Tax NAV-NFP-36 (05/11)

    Abuse Molestation Claims Exclusion NAV-NFP-01 (06/10)

    Specific Circumstances Exclusion NAV-NFP-22 (06/10)

    Endorsement NAV-NFP-MANU-01 (09/14)

    OFAC Endorsement NAV-ML-002 (11/12)

    Policyholder Disclosure Notice of Terrorism

Case: 17-04020   Doc# 7   Filed: 04/21/17   Entered: 04/21/17 16:56:00   Page 6 of 37


**In Witness Whereof,** the issuing Company has caused this policy to be signed officially below and countersigned on the Declarations page by a duly authorized representative of said Company.

[Emily Miner]
Secretary

[Stanley Galanski]
President

# Navigators Insurance Company

## GENERAL TERMS AND CONDITIONS

### THIS IS A CLAIMS-MADE AND REPORTED POLICY
### WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY.
#### PLEASE READ THE ENTIRE POLICY CAREFULLY.

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the insurance company shown in the Declarations (the "Insurer"), including the statements made in the **Proposal Form**, and subject to all terms, conditions and limitations of this Policy, the **Insureds** and the Insurer agree:

#### Section I. Defense Obligations

A.  The Insurer will have the right and duty to defend any **Claim** against any **Insured** covered under this Policy, even if the allegations in such **Claim** are groundless, false or fraudulent. The Insurer will give consideration to the **Insureds'** preference for defense counsel, but the final decision regarding the appointment of defense counsel will rest with the Insurer. The **Insureds** will have the right, at their own expense, to associate with the Insurer in the defense of any **Claim** and the negotiation of any settlement thereof.

B.  **Costs of Defense** will be part of, and not in addition to, all applicable Limits of Liability set forth in ITEM 4 of the Declarations, and the Insurer's payment of **Costs of Defense** will reduce, and may exhaust, such Limit or Limits of Liability.

#### Section II. Definitions

A.  **"Anniversary Date"** will mean that date and time that is exactly one (1) year after the inception date of this Policy as set forth in ITEM 2 of the Declarations, and each successive date and time that is exactly one (1) year after the previous **Anniversary Date**.

B.  **"Automatic Discovery Period"** will mean the period of thirty (30) days after the end of the **Policy Period** that may be available in accordance with Section III. Discovery – Extensions, part A.1.

C.  **"Claim"** will have, with respect to the coverage afforded in each Coverage Part attached to and forming a part of this Policy, the meaning given to that term in such Coverage Part.

D.  **"Company"** will mean the **Corporation** and any **Subsidiary**.

E.  **"Corporation"** will mean the entity named in ITEM 1 of the Declarations.

F.  **"Costs of Defense"** will mean reasonable and necessary legal fees, costs and expenses incurred in the investigation, defense or appeal of any **Claim**, including the costs of an appeal bond, attachment bond or similar bond; provided, however, that the Insurer will have no obligation to apply for or furnish any such bond.

G.  **"Discovery Period"** will mean **Automatic Discovery Period** and **Optional Discovery Period**.

Case: 17-04020   Doc# 7   Filed: 04/21/17   Entered: 04/21/17 16:56:00   Page 8 of 37

H.  **"Domestic Partner"** will mean any person qualifying as a domestic partner under the provisions of any applicable federal, state, or local law or under the provisions of any formal program established by the **Company**.

I.  "**Executive Officer**" shall mean any past, present or future President, Chief Executive Officer or Chief Financial Officer of the **Company**.

J.  **"Financial Insolvency"** will mean any entity included within the term "**Company**" becoming a debtor in possession, or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate such entity.

K.  "**Foreign Jurisdiction**" means any jurisdiction, other than the United States or any of its territories or possessions.

L.  "**Insured**" will have, with respect to the coverage afforded in each Coverage Part attached to and forming a part of this Policy, the meaning given to that term in such Coverage Part.

M.  "**Insured Person**" will have, with respect to the coverage afforded in each Coverage Part attached to and forming a part of this Policy, the meaning given to that term in such Coverage Part.

N.  "**Loss**" will mean compensatory damages, punitive or exemplary damages, the multiple portion of any multiplied damage award, settlements and **Costs of Defense**; provided, however, that **Loss** will not include salaries, wages, overhead or benefit expenses associated with any **Insured**, criminal or civil fines or penalties imposed by law, taxes, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed. It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award.

O.  **"Nonprofit Entity"** will mean any entity which is exempt from taxation under Sections $501c(3) - (10)$, $501c(19)$, $501d$ or $509a(1) - (3)$ of the Internal Revenue code of 1986, as amended, or any rule or regulation promulgated thereunder.

P.  "**Optional Discovery Period**" will mean the period of twelve (12) months after the end of the **Policy Period** that may be available for purchase in accordance with Section III. Discovery – Extensions, part A.2.

Q.  "**Policy Period**" will mean the period from the inception date of this Policy to the expiration date of this Policy as set forth in ITEM 2 of the Declarations, or to its earlier termination if applicable.

R.  "**Policy Year**" will mean

   1.  the period from the inception date of this Policy as set forth in ITEM 2 of the Declarations to the first **Anniversary Date**, or the earlier termination of this Policy; or

   2.  within the **Policy Period**, the period from an **Anniversary Date** to the next successive **Anniversary Date**, or the earlier termination of this Policy.

S.  "**Pollutants**" will mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Case: 17-04020   Doc# 7   Filed: 04/21/17   Entered: 04/21/17 16:56:00   Page 9 of 37

T.   **"Proposal Form"** will mean:

1.   the application or proposal form attached to and forming part of this Policy, together with any materials submitted therewith; and

2.   any applications or proposal forms submitted in connection with any policy in an uninterrupted series of policies issued by the Insurer of which this Policy is a renewal or replacement, together with any materials submitted therewith;

all of which will be retained on file by the Insurer and will be deemed to be physically attached to and form part of this Policy.

U.   **"Related Wrongful Acts"** will mean **Wrongful Acts** which are logically or causally connected by reason of any common or related fact, circumstance, situation, transaction, event or decision.

V.   **"Subsidiary"** will mean, subject to section VIII, G of these General Terms and Conditions, any **Nonprofit Entity** during any time in which the **Corporation** owns directly or through one or more subsidiaries, or controls the right to appoint, elect or designate more than fifty percent of such entity's Directors or Trustees.

W.   **"Wrongful Act"** will have, with respect to the coverage afforded in each Coverage Part attached to and forming a part of this Policy, the meaning given to that term in such Coverage Part.

## Section III. Discovery – Coverage Extensions

A.   In the event  this Policy is not renewed for any reason, and the total premium for this Policy has been paid in full:

1.   the **Insureds** will be provided with an automatic extension of the coverage provided by this Policy with respect to any **Claim** first made against any **Insured** and reported to the Insurer during the period of thirty (30) days after the end of the **Policy Period** (the **Automatic Discovery Period**), but only with respect to **Wrongful Acts** committed or attempted, or allegedly committed or attempted, before the end of the **Policy Period**.  The provision of the **Discovery Period** will not in any way increase any Limit of Liability, or create a separate or additional Limit of Liability, applicable to any Coverage Part or to this Policy as a whole, and the Limits of Liability with respect to **Claims** made during the **Automatic Discovery Period** will be part of, and not in addition to, the applicable Limit or Limits of Liability as set forth in ITEM 4 of the Declarations.

2.   the **Insureds** will have the right, upon payment of seventy five percent (75%) of the annual premium, (or if the **Policy Period** is other than annual, seventy five percent (75%) of the annualized premium), to an extension of the coverage provided by this Policy with respect to any **Claim** first made against any **Insured** and reported to the Insurer during the **Optional Discovery Period**, but only with respect to **Wrongful Acts** committed or attempted, or allegedly committed or attempted, before the end of the **Policy Period**.  As a condition precedent to the right to purchase the **Optional Discovery Period**, the total premium for this Policy must have been paid, and a written request, together with full payment of the appropriate premium for the **Optional Discovery Period**, must be provided to the Insurer no later than thirty (30) days after the end of the **Policy Period**.  The premium for the **Optional Discovery Period** is fully earned at its inception.  The purchase of the **Optional Discovery Period** will not in any way increase any Limit of Liability, or create a separate or additional Limit of Liability, applicable to any Coverage Part or to this Policy as a whole, and the Limits of Liability with respect to **Claims** made during the **Optional Discovery Period** will be part of, and not in addition to, the applicable Limit or Limits of Liability as set forth in ITEM 4 of the Declarations.

Case: 17-04020    Doc# 7    Filed: 04/21/17    Entered: 04/21/17 16:56:00    Page 10 of 37

B.    In the event of the death, incapacity or bankruptcy of any **Insured Person**, a **Claim** against such **Insured Person's** estate, heirs, legal representatives or assigns for a **Wrongful Act** committed or attempted, or allegedly committed or attempted, by such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**. No extension of coverage will be available under this Section III.B for any **Loss** for which any estate, heirs, legal representatives or assigns of an **Insured Person** may be liable by reason of his or her own actual or alleged acts, errors, omissions, misstatements, misleading statements or breaches of duty.

C.    Subject to all other terms, conditions and limitations of and endorsements to this Policy, the coverage provided under this Policy to **Insured Persons** will be extended also to apply to the lawful spouses or **Domestic Partners** of the **Insured Persons**; provided, that the extension of coverage afforded under this Section III.C will apply only to the extent any such spouse or **Domestic Partner** is a party to a **Claim** solely in his or her capacity as a spouse or **Domestic Partner** of an **Insured Person** and such **Claim** seeks damages recoverable from marital community property, property jointly held by an **Insured Person** and his or her spouse or **Domestic Partner**, or property transferred from an **Insured Person** to his or her spouse or **Domestic Partner**. No extension of coverage will be available under this Section III.C for any **Loss** for which any spouse or **Domestic Partner** of an **Insured Person** may be liable by reason of his or her own actual or alleged acts, errors, omissions, misstatements, misleading statements or breaches of duty.

## Section IV. Limit of Liability

A.    With respect to each Coverage Part, the Insurer will be liable to pay one hundred percent (100%) of **Loss** in excess of the applicable retention amount set forth in ITEM 5 of the Declarations, up to the Limit of Liability applicable to such Coverage Part as set forth in ITEM 4 of the Declarations.

B.    The Insurer's maximum aggregate Limit of Liability per **policy year** under this Policy for all **Loss** will be the amount set forth in ITEM 4.d of the Declarations, regardless of the number of **Insureds**, the number of **Claims**, the number of Coverage Parts, the time of payment or the Coverage Part or Coverage Parts under which such **Loss** is paid.

C.    If the Insurer's maximum aggregate Limit of Liability per **policy year** with respect to any **Claim** is or has been exhausted by the payment of **Loss**, all obligations of the Insurer in connection with such **Claim** will be completely fulfilled and exhausted, and the Insurer will have no obligation to make any further payments of **Loss** or to advance any **Costs of Defense** in connection with such **Claim** or to defend or continue to defend such **Claim**. If the Insurer's maximum aggregate Limit of Liability per **policy year** under this Policy is exhausted by the payment of **Loss**, all obligations of the Insurer under this Policy for the **policy year** will be completely fulfilled and exhausted, and the Insurer will thereafter have no obligation to make any further payments of **Loss**, to advance any **Costs of Defense** or to defend or continue to defend any **Claim**; under such circumstances, the entire **policy year** premium for this Policy will be deemed to have been fully earned.

## Section V. Retention

A.    One retention shall apply to each and every **Claim**. If a **Claim** gives rise to coverage under more than one Coverage Part, the retention applicable to **Loss** under each such Coverage Part will be applied separately to that **Loss** payable under such Coverage Part; provided,

Case: 17-04020    Doc# 7    Filed: 04/21/17    Entered: 04/21/17 16:56:00    Page 11 of 37

however, that the sum of all such retentions will not exceed the largest single retention applicable to such **Claim** under any applicable Coverage Part. The retention amount will be borne by the **Insureds** uninsured at their own risk.

B.   No retention will apply to **Loss** incurred by any **Insured Person** for which the **Company** is neither required nor permitted to provide advancement or indemnification, or for which the **Company** is required or permitted to provide advancement or indemnification but is unable to do so solely by reason of its **Financial Insolvency**.

C.   If, prior to institution of arbitration proceedings or service of suit or within 60 days of the institution of such proceedings or service of suit, the insurer and the **Company** agree to use a process of non-binding intervention by a neutral third party to resolve any **Claim** reported to the insurer, and if such **Claim** is resolved through such process, the insurer will reduce the applicable retention by fifty percent or ten thousand dollars ($10,000), whichever is less.

## Section VI.  Allocation, Costs of Defense and Settlements

A.   If a **Claim** made against any **Insured** includes both covered and uncovered matters, or is made against any **Insured** and others, the **Insureds** and the Insurer recognize that there must be an allocation between **Loss** and uninsured damages, settlement amounts and other liabilities in connection with such **Claim**. The **Insureds** and the Insurer will use their best efforts to agree upon a fair and proper allocation. If no agreement can be reached, the Insurer will advance **Costs of Defense** based on what it believes is a fair and proper allocation until such time as the issue can be resolved.

B.   The **Insureds** may not incur **Costs of Defense**, or admit liability, offer to settle, or agree to any settlement in connection with any **Claim** without the express prior written consent of the Insurer, which consent shall not be unreasonably withheld. The Insurer will not be liable for any admission, assumption or stipulation of liability, settlement or **Costs of Defense** to which it has not consented.

## Section VII.  Notice

A.   As a condition precedent to their rights under this Policy in connection with any **Claim**, the **Insureds** must give the Insurer written notice of such **Claim** as soon as practicable after such **Claim** is made, but in no event later than sixty (60) days after the end of the **Policy Period**, or during any applicable **Discovery Period**. Subject to the foregoing, written notice of a **Claim** will be deemed to have been given as soon as practicable if such notice is given not later than sixty (60) days after the Chairman of the Board of Directors, President, Chief Executive Officer, Chief Financial Officer, General Counsel, or Risk Manager of the **Company** first becomes aware of such **Claim**.

B.   If, during the **Policy Period** or **Discovery Period**, any **Insured** first becomes aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and the **Insured** gives written notice to the Insurer of:

1.   the circumstances;

2.   the **Wrongful Act** allegations anticipated; and

3.   the reasons for anticipating such a **Claim**;

Case: 17-04020    Doc# 7    Filed: 04/21/17    Entered: 04/21/17 16:56:00    Page 12 of 37

with full particulars as to the dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged or contained in such circumstances, shall be considered made at the time the Insurer received such written notice.

C.    Written notice to the Insurer under Sections VII.A and B above must be given to:

> Navigators Insurance Company
> One Penn Plaza
> New York, NY 10119
> ATTN: Navigators Pro Claims Department

or by email:    navproclaims@navg.com

## Section VIII. General Conditions

### A.    Worldwide Coverage

The coverage provided by this Policy will apply to **Claims** made, and to **Wrongful Acts** committed or attempted or allegedly committed or attempted, anywhere in the world.

### B.    Interrelationship of Claims

All **Claims** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** will be considered a single **Claim**, and will be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage.

### C.    Advancement and Indemnification

The certificate of incorporation, charter or other organizational documents of each entity included within the term "**Company**," including by-laws and resolutions, will be deemed to require advancement and indemnification of **Loss** to the **Insured Persons** to the fullest extent permitted by law.

### D.    Other Insurance

All **Loss** payable under this Policy will be specifically excess of, and will not contribute with, any other valid and collectible insurance, including but not limited to any other insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy. This Policy will not be subject to the terms of any other insurance policy or program.

### E.    Cancellation or Non-Renewal

1.    This Policy may be cancelled by the **Corporation** at any time by written notice to the Insurer. Upon cancellation, the Insurer shall retain the customary short rate portion of the premium. Return or tender of any unearned premium will not be a condition of cancellation. This Policy may be cancelled by the Insurer only for non-payment of premium;

2.    The Insurer will not be required to renew this Policy. If the Insurer elects not to renew this Policy, the Insurer will provide the **Corporation** with no less than thirty (30) days advance notice thereof. An offer by the Insurer to renew on different terms will not constitute non-renewal.

Case: 17-04020    Doc# 7    Filed: 04/21/17    Entered: 04/21/17 16:56:00    Page 13 of 37

## F. Representations and Severability

It is agreed by the **Insureds** that the particulars and statements contained in the **Proposal Form** and any information provided therewith (which shall be on file with the Insurer and be deemed attached hereto as if physically attached hereto) are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the **Insureds** that the statements in the **Proposal Forms** or in any information provided therewith are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations; provided, in the event that the **Proposal Form** contains misrepresentations made with the actual intent to deceive, or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by Underwriters under this Policy, this Policy shall be void and have no effect whatsoever with respect to those **Insureds** who made or had knowledge of such misrepresentations. Knowledge of any matter which may give rise to a **Claim** or any misrepresentation made by an **Executive Officer** shall be imputed to the **Company**, but will not be imputed to any **Insured Person** who had no knowledge of the matter which may give rise to a claim or the misrepresentation.

## G. Changes In Exposure

1. If, during the **Policy Period**, the **Company** acquires the assets of another **Nonprofit Entity** or acquires a **Subsidiary** or any other **Nonprofit Entity**, by merger, consolidation or otherwise, the coverage afforded under this Policy will be available for **Loss** resulting from **Claims** made during the **Policy Period** or, if purchased, the **Discovery Period**, against any such entity or any **Insured Persons** thereof for **Wrongful Acts** committed or attempted, or allegedly committed or attempted, by them after the effective date and time of such acquisition. If, however, such assets or the assets of the **Nonprofit Entity** so acquired exceed thirty-five percent (35%) of the total assets of the **Company** as of the date of the most recently audited financial statements of the **Company** or the number of employees of the entity so acquired exceeds thirty-five percent (35%) of the number of the **Company's** employees as of the date of the most recently audited financial statements of the **Company**, such coverage will be available only for ninety (90) days after the effective date and time of such acquisition or until the end of the **Policy Period**, whichever is earlier, unless written notice of such acquisition is given to the Insurer, together with such additional information as the Insurer may request, and the Insurer agrees by written endorsement to this Policy to provide such additional coverage on such terms, conditions and limitations, and for such additional premium, as the Insurer may require. If, however, this Policy contains a Fiduciary Liability Coverage Part, this Section VIII.G.1 will not apply to or operate to extend coverage under such Coverage Part unless the Insurer so agrees by written endorsement to such Coverage Part;

2. If, during the **Policy Period**, any entity ceases to be a **Subsidiary**, the coverage afforded under this Policy in respect of such entity and any **Insureds** thereof by reason of their service with or relationship to such entity will continue to apply to **Claims** made during the **Policy Period** or, if purchased, the **Discovery Period**, against them for **Wrongful Acts** committed or attempted, or allegedly committed or attempted, by them before such entity ceases to be a **Subsidiary**, but such coverage will cease with respect to **Claims** against any such entity or any such **Insureds** for **Wrongful Acts** committed or attempted, or allegedly committed or attempted, by them after such entity ceases to be a **Subsidiary**;

3. If, during the **Policy Period**, a transaction occurs wherein another person, entity, or group of affiliated persons and/or entities gains control of the **Corporation** through the ownership of more than fifty percent (50%) of the voting stock of the **Corporation**, or the **Corporation** merges into another entity or consolidates with another entity such that the

3. **Corporation** is not the surviving entity, the coverage afforded under this Policy will continue to apply to **Claims** made during the **Policy Period** or, if purchased, the **Discovery Period**, against any **Insured** for **Wrongful Acts** committed or attempted, or allegedly committed or attempted, before the effective date of such transaction, but coverage will cease with respect to **Claims** against the **Insureds** for **Wrongful Acts** committed or attempted, or allegedly committed or attempted, thereafter. Under such circumstances, the **Insureds** may no longer cancel the Policy and the entire premium for this Policy will be deemed to have been fully earned as of the effective date of such transaction;

4. If, during the **Policy Period**, the **Company's** or any **Subsidiary's** tax status changes from exempt to nonexempt status, the coverage afforded under this Policy in respect of the entity to which such change applies, and any **Insureds** thereof by reason of their service with or relationship to such entity will cease to apply 90 days after such change occurs unless and until:

   a. written notice of such change is given to the Insurer, together with such additional information as the Insurer may request; and

   b. the Insurer agrees in writing to provide such additional coverage on such terms, conditions and limitations, and for such additional premium, as the Insurer may require.

H. **Assistance, Cooperation and Subrogation**

   1. The **Insureds** agree to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and to do nothing which would in any way increase the Insurer's exposure under this Policy or prejudice the Insurer's actual or potential rights of recovery;

   2. In the event of a **Claim**, the **Insureds** shall, as soon as practicable, furnish the Insurer with copies of reports, investigations, pleadings and other papers in connection therewith;

   3. In the event of any payment under this Policy, the Insurer will be subrogated to all of the **Insureds'** rights of recovery and the **Insureds** will execute all papers required and do everything that may be necessary to secure such rights, including the execution of such documents as may be necessary to enable the Insurer to effectively bring suit in the name of any **Insured**.

I. **Assignment**

   Assignment of interest under this Policy will not bind the Insurer until its consent is endorsed hereon.

J. **Conformity to Statute**

   Any terms of this Policy which are in conflict with the terms of any applicable laws are hereby amended to conform to such laws.

K. **No Action Against the Insurer**

   1. No action shall be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, and until the **Insureds'** obligation to pay shall have been finally determined by an adjudication against the **Insureds** or by written agreement of the **Insureds**, the claimant or claimants and the Insurer;

Case: 17-04020   Doc# 7   Filed: 04/21/17   Entered: 04/21/17 16:56:00   Page 15 of 37

2.  No person or organization shall have any right under this Policy to join the Insurer as a party to any **Claim** against the **Insureds**; nor may the Insurer be impleaded by any **Insured** or such **Insured's** legal representative in any such **Claim**.

## L. Corporation Represents Insureds

By acceptance of this Policy, the **Corporation** is designated to act on behalf of the **Insureds** for all purposes under this Policy, including but not limited to the giving and receiving of all notices and correspondence, the cancellation or non-renewal of this Policy, the payment of premiums, and the receipt of any return premiums that may be due under this Policy.

## M. Bankruptcy or Insolvency

No bankruptcy or insolvency of any **Insured** will relieve the Insurer of any of its obligations under this Policy.

## N. Application of Coverage Parts

All Coverage Parts are subject to these GENERAL TERMS AND CONDITIONS. Except as stated in these GENERAL TERMS AND CONDITIONS or unless specifically stated otherwise in any Coverage Part or endorsement, the provisions of each Coverage Part will apply only to that Coverage Part and will in no way limit, increase or affect the coverage afforded under any other Coverage Part. If any provision in these GENERAL TERMS AND CONDITIONS is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of that Coverage Part will control for the purposes thereof.

## O. OFAC Disclosure

The Office of Foreign Assets Control ("OFAC") administers and enforces U.S. sanctions policy, based on Presidential declarations of "national emergency." OFAC has identified and listed numerous foreign agents, front organizations, terrorists, terrorist organizations and narcotics traffickers as "Specially Designated Nationals and Blocked Persons"; this list can be located on the website for the United States Department of the Treasury (www.treas.gov/ofac). In accordance with OFAC regulations, if it is determined that any **Insured**, or any person or entity claiming the benefits of this insurance, has violated U.S. sanctions law or is a Specially Designated Nationals and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC. Other limitations on premiums and payment may also apply.

## P. Headings

The headings of the various sections of this Policy are intended for reference only and are not to form part of the terms and conditions of coverage.

## Q. Entire Agreement

By acceptance of this Policy, the **Insureds** agree that this Policy (including the Declarations, the **Proposal Form** and the Coverage Parts specified in ITEM 3 of the Declarations), and any written endorsements attached hereto constitute the entire agreement between the parties relating to this insurance. The terms, conditions and limitations of this Policy can be waived or changed only by written endorsement.

# DIRECTORS AND OFFICERS LIABILITY COVERAGE PART

## THIS IS A CLAIMS-MADE AND REPORTED POLICY
## WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY.
### PLEASE READ THE ENTIRE POLICY CAREFULLY.

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the insurance company shown in the Declarations (the "Insurer"), including the statements made in the **Proposal Form**, and subject to all terms, conditions and limitations of this Policy, the **Insureds** and the Insurer agree:

### Section I. Insuring Agreements

Provided that a **Claim** is first made against an **Insured** during the **Policy Period** or the **Discovery Period**, if purchased, and further that such **Claim** is reported to the Insurer in accordance with Section VII. Notice of the GENERAL TERMS AND CONDITIONS:

A.  The Insurer will pay to or on behalf of the **Insured Persons** all **Loss** which the **Insured Persons** are legally obligated to pay as a result of a **Claim** against the **Insured Persons** for a **Wrongful Act** by the **Insured Persons**, except for **Loss** which the **Company** actually pays as advancement or indemnification.

B.  The Insurer will pay to or on behalf of the **Company** all **Loss** which the **Insured Persons** are legally obligated to pay as a result of a **Claim** against the **Insured Persons** for a **Wrongful Act** by the **Insured Persons**, but only to the extent the **Company** is required or permitted by law to pay such **Loss** to or on behalf of the **Insured Persons** as advancement or indemnification.

C.  The Insurer will pay to or on behalf of the **Company** all **Loss** which the **Company** is legally obligated to pay as a result of a **Claim** for a **Wrongful Act** by the **Company**.

### Section II. Definitions

A.  **"Claim" will mean:**

1.  a written demand for monetary or non-monetary relief made against any **Insured**;

2.  any written request for any **Insured** to toll or waive any potentially applicable statute of limitations;

3.  a civil, criminal, administrative or arbitration proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment or criminal information, or the receipt or filing of notice of charges or similar document;

4.  an administrative or regulatory investigation of an **Insured Person** which is commenced by the filing or issuance of a notice of charges, formal investigative order or similar document specifically identifying in writing such **Insured Person** as a person against whom a **Claim**, as defined in parts 1 – 3 of this definition, may be brought; or

5.  an extradition order or similar document filed against any **Insured**.

B.  **"Employee" will mean:**

1.  any individual whom the **Company** compensates by wages, salary and/or commissions and whose labor or service is directed by the **Company**, whether such individual performs such labor or service on a full-time, part-time, seasonal or temporary basis;

2.  any individual who performs labor or services for the **Company** as a volunteer; and

Case: 17-04020   Doc# 7   Filed: 04/21/17   Entered: 04/21/17 16:56:00   Page 17 of 37

3.  any individual who is leased or loaned to the **Company** to perform labor or service for the **Company**, but only if the **Company** provides indemnification to such individual in the same manner and to the same extent as to its other **Employees**.

C.  For purposes of this Coverage Part, the term "**Insured**" will mean the **Company** and all **Insured Persons**.

D.  For purposes of this Coverage Part, the term "**Insured Person**" will mean:

1.  any past, present or future duly elected or appointed director, officer, trustee or member of the board of managers or any committee of the **Company**;

2.  any executive of the **Company** located outside of the United States of America who holds a position with respect to the **Company** equivalent to any position described in Sections II.B.1 or II.B.2 above; or

3.  any **Employee**.

E.  For purposes of this Coverage Part, the term "**Loss**" will include pre-and post-judgment interest. "**Loss**" shall not include:

1.  any portion of damages, judgments or settlements arising out of any **Claim** alleging that the **Company** paid an inadequate price or consideration for the purchase of the **Company's** securities;

2.  any costs or fees incurred by the **Company** to comply with an order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief, or any costs or fees awarded in connection with such compliance or agreement;

3.  any amount not indemnified by the **Company** for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order;

4.  any amount incurred by an **Insured** in the defense of investigation of any action, proceeding or demand that is not then a **Claim** even if (a) such amount also benefits the defense of a covered **Claim**, or (b) such action, proceeding or demand subsequently gives rise to a **Claim**;

5.  any amount allocated to non-covered loss.

With respect to any **Claim** arising out of any Public or Private Offering of Securities of the **Company**, the Insurer shall not assert that the portion of any settlement and/or **Costs of Defense** of that **Claim** which relates to any alleged violations of Section 11 or 12 of the Securities Act of 1933, as amended, constitutes uninsurable loss and shall treat that portion of such settlement and/or **Cost of Defense** as constituting **Loss** under the Policy.

F.  "**Outside Capacity**" will mean service by an **Insured Person** as a director, officer, trustee, regent, governor or equivalent executive of an **Outside Entity**, but only if such service is with the knowledge and consent of, or at the request of, the **Company**.

G.  "**Outside Entity**" will mean any **Nonprofit Entity** other than the **Company**.

H.  "**Personal Injury**" will mean false arrest, wrongful detention or imprisonment, malicious prosecution, defamation including libel, slander, publication of material in violation of a person's right of privacy, invasion of privacy or wrongful entry or eviction.

I.  "**Publishers Liability**" shall mean infringement of copyright, trademark, trade name, trade dress, service mark, unauthorized use of title, plagiarism or misappropriation of ideas, but only with respect to materials that are in connection with and a regular part of the **Insured's** own publications. "**Publishers Liability**" does not mean infringement or misappropriation of patents or trade secrets.

Case: 17-04020   Doc# 7   Filed: 04/21/17   Entered: 04/21/17 16:56:00   Page 18 of 37

J.  For purposes of this Coverage Part, the term **"Wrongful Act"** will mean:

1.  any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty, including any actual or alleged **Personal Injury** or **Publishers Liability**, by any **Insured Person** in his or her capacity as such with the **Company**;

2.  any matter claimed against any **Insured Person** solely by reason of his or her status with the **Company**;

3.  any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by any **Insured Person** in his or her **Outside Capacity**; or

4.  any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the **Company**.

K.  **"Securities Laws"** will mean the Securities Act of 1933, Securities Exchange Act of 1934, Investment Company Act of 1940, any state "blue sky" securities law, or any other federal, state or local securities law or any amendments thereto or any rules or regulations promulgated thereunder or any other provision of statutory or common law used to impose liability in connection with the offer to sell or purchase, or the sale or purchase, of securities.

## Section III. Exclusions

The Insurer will not be liable under this Coverage Part to make any payment of any **Loss** in connection with any **Claim** made against any **Insured**:

A.  brought about or contributed to by:

1.  the gaining by any **Insured** of any profit, advantage or remuneration to which such **Insured** was not legally entitled; or

2.  the deliberately fraudulent or criminal acts of any **Insured**;

    provided, however: (i) this exclusion shall only apply if it is finally adjudicated such conduct in fact occurred; (ii) this exclusion shall not apply to coverage provided under INSURING AGREEMENT B;

B.  based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given under any other policy of which this Coverage Part is a renewal or replacement;

C.  based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any prior and/or pending civil, criminal, administrative or investigative proceeding involving the **Company,** any **Insured** as of the Prior and Pending Date stated in ITEM 6 of the Declarations, or any individual or related fact, circumstance or situation underlying or alleged in such proceeding;

D.  based upon or arising out of:

1.  bodily injury, sickness, disease, mental anguish, emotional distress or death of any person, loss of consortium; or

2.  damage to, destruction or loss of use of any property, including the loss of use property not damaged or destroyed:

E.  based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged violation of the Employee Retirement Income Security Act of 1974, as amended, or any rules or regulations promulgated thereunder;

F.  for any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by

Case: 17-04020    Doc# 7    Filed: 04/21/17    Entered: 04/21/17 16:56:00    Page 19 of 37

any **Insured Person** in his or her capacity as an **Employee**, director, officer, trustee, regent, governor or equivalent executive of any entity other than the **Company** or an **Outside Entity**, even if directed or requested by the **Company** to serve in such capacity;

G.    for any **Wrongful Act** of any **Insured Person** in his or her **Outside Capacity** with respect to any **Outside Entity**, if such **Claim** is brought by or on behalf of the **Outside Entity** or any **Employee**, director, officer, trustee, regent, governor or equivalent executive thereof;

H.    by or on behalf of any **Insured** or any security holder of the **Company**; provided, however, that this exclusion shall not apply to any **Claim**:

  1.    brought by any **Insured** where such **Claim** is in the form of a cross-claim or third party claim for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded by the terms of this Coverage Part; or

  2.    brought by any security holder of the **Company**, whether directly or derivatively, if the security holder bringing such **Claim** is acting totally independently of, and without the solicitation, assistance, active participation or intervention of, the **Company** or any **Insured Person**;

  3.    brought in any bankruptcy proceeding by or against any entity included within the term "**Company**" by any creditors committee, examiner, trustee, receiver, liquidator or rehabilitator appointed with respect to such entity;

  4.    brought by any **Insured Person** who has neither served in such capacity nor as consultant to any entity included within the term "**Company**" for at least three (3) years prior to such **Claim** having been first made;

  5.    brought by any **Insured Person** of any entity included within the term "**Company**" formed and operating outside the United States of America or any of its territories or possessions against such **Company** or any **Insured Person** thereof, if such **Claim** is brought and maintained outside the United States of America, Canada or any other common law jurisdiction; or

  6.    arises out of, is based upon, or is attributable to any whistleblower activity, including but not limited to any such activity protected under the Sarbanes-Oxley Act of 2002, the False Claims Act, or any similar federal, state, local or foreign law or statute;

I.    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving:

  1.    actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** or radiation;

  2.    any loss, cost or expense arising out of any:

    a.    Request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**; or

    b.    **Claim** or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, **Pollutants**;

J.    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any initial public offering of the **Company's** securities or any registration statement or prospectus related thereto;

K.    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving the actual or alleged violation of any **Securities Laws**; provided, however, that this exclusion will not

Case: 17-04020    Doc# 7    Filed: 04/21/17    Entered: 04/21/17 16:56:00    Page 20 of 37

apply to the extent that such **Claim** is based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving the **Company's** offer or sale of debt securities of the **Company** in a transaction that is (or in a series of transactions that are) exempt from registration under the Securities Act of 1933, as amended, and under the rules and regulations promulgated thereunder;

L.     for any **Wrongful Act** of any **Subsidiary** or the **Insured Persons** of such **Subsidiary** or any entity that merges with the **Company** or the **Insured Persons** of such entity that merges with the **Company** occurring:

1.     prior to the date such entity became a **Subsidiary** or was merged with the **Company**;

2.     subsequent to the date such entity became a **Subsidiary** or was merged with the **Company** which together with a **Wrongful Act** occurring prior to the date such entity became a **Subsidiary** or was merged with the **Company**, would constitute **Related Wrongful Acts**; or

3.     subsequent to the date the **Corporation** ceased to own, directly or indirectly, more than fifty percent (50%) of the voting stock of such **Subsidiary**;

M.     based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any liability under any contract or agreement; provided, however, that this exclusion will not apply to the extent the **Company** would have been liable in the absence of such contract or agreement;

N.     based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged:

1.     employment-related **Wrongful Act**;

2.     discrimination against or harassment of any person or entity that is not an **Insured**;

O.     based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged infringement or misappropriation of patent or trade secret;

P.     based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged unintentional violation of any common law or any federal, state or local statutory law concerning political campaign contributions, including the Federal Election Campaign Act of 1971, as amended, and Chapters 95 and 96 of the Internal Revenue Code of 1986, and amendments thereto.

For the purpose of determining the applicability of the foregoing exclusions, no **Wrongful Act** of any **Insured Person** shall be imputed to any other **Insured Person**, and only the **Wrongful Acts** of any president, chief executive officer or chief financial officer of the **Company** shall be imputed to the **Company**.

## Section IV. Claims Against Insured Persons for Wrongful Acts in Their Outside Capacity

A.     In the event a **Claim** is made against an **Insured Person** for **Wrongful Acts** in his or her **Outside Capacity** with respect to any **Outside Entity**, the coverage afforded under this Coverage Part in respect of such **Claim** will be specifically excess of, and will not contribute with, any insurance available to such **Insured Person** from such **Outside Entity** and any advancement or indemnification such **Outside Entity** is required or permitted to make to such **Insured Person**. If the Insurer shall have issued any policy or policies of insurance to such **Outside Entity**, payment by the Insurer under any such policy in respect of such **Claim** will reduce and may therefore exhaust, by the amount of such payment, the Insurer's Limit of Liability available under this Coverage Part for such **Claim**.

B.     For purposes of this Section IV, the certificate of incorporation, charter or other organizational documents of each **Outside Entity**, including by-laws and resolutions, will be deemed to require advancement and indemnification of **Loss** to such **Outside Entity's** directors, officers, trustees, regents, governors and equivalent executives to the fullest extent permitted by law.

## Section V. Additional Excess Aggregate Limit of Liability

A.     Notwithstanding anything in this Policy or this Coverage Part to the contrary, the Additional Excess Aggregate

Case: 17-04020   Doc# 7   Filed: 04/21/17   Entered: 04/21/17 16:56:00   Page 21 of 37

Limit of Liability dedicated for Directors and Officers will be an additional Excess Limit of Liability in an aggregate amount not to exceed the amount stated in Item 4.a.i of the Declarations, which amount is in addition to and not part of the Limits of Liability stated in Item 4.a. of the Declarations.

In the event the Additional Excess Aggregate Limit of Liability dedicated for Directors and Officers is exhausted by payment of **Loss**, or has been tendered to or on behalf of Directors and Officers, then any and all obligations of the Insurer hereunder shall be deemed to be completely fulfilled and extinguished.

B.    No coverage shall be provided by Section V of this Coverage Part for the first **Claim** made for which coverage is provided under this Coverage Part. This Additional Excess Aggregate Limit of Liability dedicated for Directors and Officers is available solely for **Loss** resulting from any subsequent **Claim** that is covered under INSURING AGREEMENT A of this Coverage Part. The first **Claim** made for which coverage is provided under this Coverage Part shall be determined by the chronological time such **Claim** was made regardless of when coverage is acknowledged by the Insurer.

C.    The Additional Excess Aggregate Limit of Liability dedicated for Directors and Officers shall be excess of any insurance available to pay **Loss** for such **Claims**, including this Policy and all insurance that is specifically excess to this Policy. Such excess insurance must be completely exhausted by payment of loss, damages or costs of defense, as those terms are defined by such excess insurance, before the Insurer shall have any obligation to make any payment on account of the Additional Excess Aggregate Limit of Liability dedicated for Directors and Officers.

D.    For purposes of this provision only, Directors and Officers shall only mean:

    1.    any past, present or future duly elected or appointed director, officer, trustee or member of the board of managers or any committee of the **Company**;

    2.    any executive of the **Company** located outside of the United States of America who holds a position with respect to the **Company** equivalent to any position described in Sections V.D.1 above.

## Section VI. Waiver of Retention under Certain Circumstances

A.    No retention will apply under this Coverage Part to **Loss** incurred by the **Insured Persons** if advancement or indemnification of such **Loss** by the **Company** is neither required nor permitted under applicable law or, if advancement or indemnification of such **Loss** by the **Company** is required or permitted under applicable law, such advancement or indemnification is not made solely by reason of the **Company's Financial Insolvency**.

B.    If, in connection with any **Claim**, a final adjudication, with prejudice, pursuant to a trial, motion to dismiss or motion for summary judgment or a complete and final settlement, with prejudice, establishes that no **Insured** is liable for any **Loss** in connection with such **Claim**, no retention will apply to **Costs of Defense** incurred in connection with such **Claim** and, subject to all other terms, conditions and limitations of this Policy applicable to this Coverage Part, the Insurer will reimburse the **Insureds** for any covered **Costs of Defense** paid by them in connection with such **Claim**.

## Section VII. Order of Payments

A.    **Loss** covered under this Coverage Part will be paid by the Insurer in the following order:

    1.    first, the Insurer will pay such **Loss** covered under INSURING AGREEMENT A of this Coverage Part;

    2.    with respect to whatever amount of the Insurer's Limit of Liability under this Coverage Part remains after the payment of **Loss** covered under INSURING AGREEMENT A of this Coverage Part, the Insurer will then pay such **Loss** covered under INSURING AGREEMENT B of this Coverage Part; and

    3.    with respect to whatever amount of the Insurer's Limit of Liability under this Coverage Part remains after the payment of **Loss** covered under INSURING AGREEMENTS A and B of this Coverage Part, the Insurer will then pay such **Loss** covered under INSURING AGREEMENT C of this Coverage Part; and

Case: 17-04020    Doc# 7    Filed: 04/21/17    Entered: 04/21/17 16:56:00    Page 22 of 37

4. with respect to whatever amount of the Insurer's Limit of Liability under this Coverage Part remains after the payment of **Loss** covered under INSURING AGREEMENTS A, B and C of this Coverage Part, the Insurer will then pay such other **Loss** covered under this Coverage Part.

B. Nothing in this Section VII is intended, nor shall it be construed, to increase the Insurer's maximum aggregate Limit of Liability applicable to **Loss** under this Coverage Part.

Case: 17-04020    Doc# 7    Filed: 04/21/17    Entered: 04/21/17 16:56:00    Page 23 of 37

# EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

## THIS IS A CLAIMS-MADE AND REPORTED POLICY
## WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY.
### PLEASE READ THE ENTIRE POLICY CAREFULLY.

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the insurance company shown in the Declarations (the "Insurer"), including the statements made in the **Proposal Form**, and subject to all terms, conditions and limitations of this Policy, the **Insureds** and the Insurer agree:

## Section I. Insuring Agreement

Provided that a **Claim** is first made against an **Insured** during the **Policy Period** or the **Discovery Period**, if purchased, and further that such **Claim** is reported to the Insurer in accordance with Section VII. Notice of the GENERAL TERMS AND CONDITIONS, the Insurer will pay to or on behalf of the **Insureds** all **Loss** which the **Insureds** are legally obligated to pay as a result of a **Claim** first made against the **Insureds** during the **Policy Period** or the **Discovery Period**, if purchased, for a **Wrongful Act** by an **Insured** in his, her or its capacity as such.

## Section II. Definitions

A.    For purposes of this Coverage Part, the term **"Claim"** will mean:

    1.    any of the following:

        a.    a written demand for monetary or injunctive relief or a written demand for reinstatement, re-employment or re-engagement;

        b.    a civil proceeding commenced by the service of a complaint, summons, notice of application, writ, claim form or similar pleading in any jurisdiction in the world;

        c.    an arbitration proceeding pursuant to an employment contract, policy or practice of the **Company** commenced by receipt of a demand for arbitration or similar document;

        d.    a criminal proceeding outside the United States of America commenced by a return of an indictment or information or similar document; or

        e.    a formal administrative or regulatory proceeding by or before the Equal Employment Opportunity Commission, or any other similar government agency located anywhere in the world with jurisdiction over the **Company's** employment practices, which is commenced by the issuance of a notice of charges, formal investigative order or similar document and an audit conducted by the Office of Federal Contract Compliance Programs which is commenced by the issuance of a notice of violation, order to show cause or written demand for monetary or injunctive relief.

    which is brought and maintained by or on behalf of any past, present or prospective **Employee** against any **Insured** for any **Wrongful Act**, including any appeal therefrom; or

    2.    any written request for any **Insured** to toll or waive any potentially applicable statute of limitations related to any employment **Claim** as described in paragraph 1. above.

    However, **Claim** will not include any labor or grievance arbitration or other proceeding which is subject to a collective bargaining agreement.

B.    **"Employee"** will mean:

    1.    any individual whom the **Company** compensates by wages, salary and/or commissions and whose labor

Case: 17-04020    Doc# 7    Filed: 04/21/17    Entered: 04/21/17 16:56:00    Page 24 of 37

or service is directed by the **Company**, whether such individual performs such labor or service on a full-time, part-time, seasonal or temporary basis;

2.     any individual who performs labor or services for the **Company** as a volunteer;

3.     any individual who is leased or loaned to the **Company** to perform labor or service for the **Company**, but only if the **Company** provides indemnification to such individual in the same manner and to the same extent as to its other **Employees**; and

4.     any individual contracted to perform work for the **Company** or who is an independent contractor for the **Company**, but only if, prior to any **Claim** against such individual, the **Company** shall have agreed in writing to provide indemnification to such individual for matters within the scope of coverage of this Coverage Part, and the **Company** shall have paid any additional premium required by the Insurer in connection with such individual.

C.     For purposes of this Coverage Part, the term **"Insured"** will mean the **Company** and all **Insured Persons**.

D.     For purposes of this Coverage Part, the term **"Insured Person"** will mean:

1.     any duly elected or appointed principal, partner, director, officer, trustee, in-house general counsel, risk manager or member of the board of managers or management committee of the **Company**;

2.     any executive of the **Company** located outside of the United States of America who holds a position with respect to the **Company** equivalent to any position described in Sections II.D.1 above; or

3.     any **Employee**.

E.     For purposes of this Coverage Part, the term **"Loss"** will include awards of front pay and back pay and liquidated damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act, but **Loss** will not include:

1.     any costs associated with the modification of any building or property to provide any reasonable accommodations required by or made as a result of or to conform with the requirements of the Americans with Disabilities Act, the Civil Rights Act of 1964 or any similar federal, state or local law; or

2.     any compensation, including benefits, for any person hired, promoted or reinstated pursuant to a judgment settlement, order or other resolution of a **Claim**.

F.     "**Third Party Wrongful Act**" will mean any actual or alleged:

1.     discrimination against any natural person, other than an **Employee** or applicant for employment with the **Company**, who is a customer, vendor, service provider or other business invitee of the **Company**, based on such person's age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, pregnancy, disability, HIV or other health status, Vietnam Era veteran or other military status, or other protected status or characteristic under federal, state or local law; or

2.     sexual harassment, including unwelcome sexual advances, requests for sexual favors or other offensive conduct of a sexual nature, against any natural person, other than an **Employee** or applicant for employment with the **Company**, who is a customer, vendor, service provider or other business invitee of the **Company**.

G.     **"Wage and Hour Claim"** will mean any **Claim** alleging violation of a state, local or federal law (including the applicable provisions of the Fair Labor Standards Act other than the Equal Pay Act) or any state, local or federal regulations governing the payment of wages (including but not limited to the payment of overtime, on call time, rest periods minimum wages) or the classification of employees for the purposes of determining employees eligibility for compensation or other benefits.

H.     For purposes of this Coverage Part, the term **"Wrongful Act"** will mean:

1. any actual or alleged:

   a. wrongful dismissal, discharge or termination (whether actual, constructive or retaliatory) of employment, wrongful failure or refusal to hire or promote, wrongful discipline or demotion, wrongful deprivation of career opportunity, negligent employment evaluation, employment related misrepresentation, or failure to grant tenure;

   b. sexual or other workplace harassment, including quid pro quo and hostile work environment;

   c. unlawful employment discrimination, including discrimination based on a person's age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, pregnancy, disability, HIV or other health status, Vietnam Era veteran or other military status, or other protected status or characteristic under federal, state or local law, including but not limited to:

      • Title VII of the Civil Rights Act of 1964;
      • the Equal Pay Act of 1963;
      • the Age Discrimination Act of 1967;
      • Sections 501 and 502 of the Rehabilitation Act of 1973;
      • the Uniformed Services Employment and Reemployment Rights Act; and
      • Titles I and IV of the Americans with Disabilities Act of 1990;

   d. employment-related invasion of privacy, defamation (including libel and slander) or negligent or intentional infliction of emotional distress;

   e. failure of the **Company** to create, provide for or enforce adequate or consistent employment-related policies;

   f. retaliatory treatment on account of an **Employee's** exercise or attempted exercise of his or her employment-related rights under law, including but not limited to Sections 806 and 1107 of the Sarbanes-Oxley Act of 2002;

   g. violation of employment-related civil rights relating to any of the above; or

   h. violation of the Family and Medical Leave Act of 1993;

   i. **Third Party Wrongful Act** (if purchased);

   committed or attempted, or allegedly committed or attempted, with respect to an **Employee** or an applicant for employment with the **Company**; and

2. If it is stated in ITEM 3 of the Declarations that the Optional Third Party Coverage under this Coverage Part has been purchased, any **Third Party Wrongful Act**.

## Section III. Exclusions

A. The Insurer will not be liable under this Coverage Part to make any payment of any **Loss** in connection with any **Claim** made against any **Insured**:

   1. brought about or contributed to by:

      a. the gaining by any **Insured** of any profit, advantage or remuneration to which such **Insured** was not legally entitled; or

      b. the deliberately fraudulent or criminal acts of any **Insured**;

      provided, however, this exclusion will apply only if it is finally adjudicated that such conduct in fact

Case: 17-04020   Doc# 7   Filed: 04/21/17   Entered: 04/21/17 16:56:00   Page 26 of 37

occurred;

2.  based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given under any other policy of which this Coverage Part is a renewal or replacement;

3.  based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any prior and/or pending civil, criminal, administrative or investigative proceeding or Office of Federal Contract Compliance Programs audit involving any **Insured** as of the Prior and Pending Date stated in ITEM 6 of the Declarations, or any individual or related fact, circumstance or situation underlying or alleged in any such proceeding or audit;

4.  for any actual or alleged;

    a.  bodily injury, sickness, mental anguish, emotional distress (other than employment-related mental anguish, emotional distress or humiliation);

    b.  false arrest, wrongful detention or imprisonment, malicious prosecution or abuse of process, defamation, including libel, slander, publication of material in violation of a person's right of privacy, invasion of privacy, trespass, nuisance, wrongful entry or eviction, assault, battery, loss of consortium, false arrest, false imprisonment; or

    c.  damage to, destruction or loss of use of any property, including the loss of use any property not damaged or destroyed;

5.  based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Insured Person's** activities as an employee, director, officer, trustee, regent, governor or equivalent executive of any employee trust, charitable or other organization, corporation, company or business other than the **Company**;

6.  for recovery of any amounts owing under, or assumed by any **Insured** pursuant to, any contract with an independent contractor, express contract of employment or any express obligation to make payments in the event of a termination of employment; provided, that this exclusion will not apply to **Defense Costs**, nor to liability which an **Insured** would have had in the absence of such express contract or obligation;

7.  based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any stock, stock options or stock appreciation rights, whether vested or unvested, including without limitation restricted stock, to which any claimant is or is alleged to be entitled pursuant to a plan or agreement with the **Company**;

8.  for compensation earned by any claimant in the course of employment but not paid for any reason by the **Company**, including any unpaid salary, wages, bonuses, overtime, severance pay, retirement benefits, prerequisites, fringe benefits, vacation days, sick days and medical benefits or insurance to which a claimant is or is alleged to be entitled had the **Company** provided the claimant with a continuation or conversion of such benefits or insurance (or the equivalent value of any such compensation or benefits allegedly earned but not paid);

9.  based upon, arising out of, or attributable to directly or indirectly, in connection with, related to or in any way involving any **Wage and Hour Claim**; however, this exclusion does not apply to **Defense Costs**;

10. for any actual or alleged violation of the responsibilities, obligations or duties imposed on any **Insured** by any workers' compensation, unemployment compensation, disability, retirement, social security or other employment benefit statute, rule or law, including but not limited to the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, the Fair Labor Standards Act (except the Equal Pay Act of 1963), the Occupational Safety and Health Act or the Consolidated Omnibus Budget Reconciliation Act of 1985 or any similar state laws; provided, that this exclusion will not apply to any allegation of any retaliatory treatment on account of an **Employee's** exercise or attempted

exercise of his or her employment-related rights under any of the foregoing;

11. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving:

    a. actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** or radiation; or

    b. any loss, cost or expense arising out of any:

        i. Request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**; or

        ii. **Claim** or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, **Pollutants**.

However, that this exclusion will not apply to any allegation of any retaliatory treatment on account of an **Employee's** exercise or attempted exercise of his or her employment-related rights;

12. for any **Wrongful Act** of any **Subsidiary** or the **Insured Persons** of such **Subsidiary** or any entity that merges with the **Company** or the **Insured Persons** of such entity that merges with the **Company** occurring:

    (1) prior to the date such entity became a **Subsidiary** or was merged with the **Company**;

    (2) subsequent to the date such entity became a **Subsidiary** or was merged with the **Company** which, together with a **Wrongful Act** occurring prior to the date such entity became a **Subsidiary** or was merged with the **Company**, would constitute **Related Wrongful Acts**; or

    (3) subsequent to the date the **Corporation** ceased to own, directly or indirectly, more than fifty percent (50%) of the voting stock of such **Subsidiary**;

B. The Insurer will not be liable under the Optional Third Party Coverage under this Coverage Part, if purchased, to make any payment of any **Loss** in connection with any **Claim** made against any **Insured** for any **Third Party Wrongful Act** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged price fixing, restraint of trade, monopolization, unfair trade practices or violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other statute or law regulating anti-trust, monopoly, price fixing, price discrimination, predatory pricing or activities in restraint of trade.

C. For the purpose of determining the applicability of the foregoing exclusions, no **Wrongful Act** of any **Insured Person** shall be imputed to any other **Insured Person**. The **Wrongful Acts** of any past, present or future chairman of the board, president, chief executive officer, chief operating officer or chief financial officer of the **Company** shall be imputed to the **Company**.

### Section IV. Coordination of Coverage

A. If a **Claim** made against the **Insureds** is covered under this Coverage Part and under any other Coverage Part forming a part of this Policy, the Insurer will first pay any **Loss** in connection with such **Claim** under this Coverage Part, and then, with respect to whatever amount of the Insurer's Limit of Liability under this Policy remains after the payment of any **Loss** covered under this Coverage Part, the Insurer will pay such **Loss** which is covered under any other Coverage Part forming a part of this Policy.

B. If notice of a **Claim** has been given under any other Coverage Part forming a part of this Policy and the Insurer

Case: 17-04020   Doc# 7   Filed: 04/21/17   Entered: 04/21/17 16:56:00   Page 28 of 37

determines that such **Claim** would be covered under this Coverage Part had notice been given hereunder, the **Insureds** will be deemed to have given notice of such **Claim** under this Coverage Part at the same time that notice of such **Claim** was given under such other Coverage Part.

## Section V. Waiver of Retention under Certain Circumstances

No retention will apply under this Coverage Part to **Loss** incurred by the **Insured Persons** if advancement or indemnification of such **Loss** by the **Company** is neither required nor permitted under applicable law or, if advancement or indemnification of such **Loss** by the **Company** is required or permitted under applicable law, such advancement or indemnification is not made solely by reason of the **Company's Financial Insolvency**.

## Section VI. Investigation and Settlement

A.   The Insurer shall have the right but not the obligation to make any investigation it deems expedient and with the consent of the **Insureds** against whom the **Claim** has been made or the **Company** on behalf of the **Insureds**, make settlement within the available Limit of Liability applicable to this Coverage Part (whether above or below the applicable Retention). If the **Insureds**, or the **Company** on behalf of the **Insureds**, shall refuse to consent to any settlement recommended by the Insurer and shall act to contest or continue any actions or proceedings in connection with such **Claim**, then, subject to the available Limit of Liability and the applicable Retention, the Insurer's liability for all **Loss** in connection with such **Claim** shall not exceed the amount for which the **Claim** could have been settled, plus the reasonable **Costs of Defense** incurred with the Insurer's consent up to the date of refusal to consent by the **Insured** and/or the **Company**: plus

B.   seventy percent (70%) of any **Loss** in excess of the amount referenced in paragraph A. above, incurred in connection with such **Claim**. The remaining thirty percent (30%) of any **Loss** in excess of the amount referenced in paragraph A. above, will not satisfy any portion of the Insured's Retention and will be borne solely by the **Insureds**, at their own risk.

## Section VII. Sub-Limit of Liability and Retention Applicable to Wage and Hour Claims

A.   The Insurer's maximum aggregate Limit of Liability for **Wage and Hour Claims** will be the amount set forth in ITEM 4.b.i of the Declarations, which amount will be part of, and not in addition to, the Insurer's maximum aggregate Limit of Liability for all **Loss** under this Coverage Part as set forth in ITEM 4.b of the Declarations.

B.   A retention amount will apply to **Wage and Hour Claims** payable under this Coverage Part as set forth in ITEM 5.b. of the Declarations and in accordance with Section V. of the GENERAL TERMS AND CONDITIONS.

Case: 17-04020    Doc# 7    Filed: 04/21/17    Entered: 04/21/17 16:56:00    Page 29 of 37

This endorsement, effective 12:01 am, 03/24/2016 forms part of

Policy number:     NY16DOLV02898NV

Issued to:          Independent Adoption Center

By:                 Navigators Insurance Company


## CALIFORNIA AMENDATORY ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.


**Section VIII. General Conditions, E. Cancellation or Non-Renewal** is deleted in its entirety and replaced with the following:

### E.  Cancellation or Non-Renewal

1.  This Policy may be cancelled by the **Corporation** at any time by written notice to the Insurer. Upon cancellation, the Insurer shall retain the customary short rate portion of the premium. Return or tender of any unearned premium will not be a condition of cancellation.

2.  The Insurer may cancel this Policy, for only one or more of the following reasons, by mailing or delivering to the **Corporation** at the mailing address shown in the Policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation:

    a.  Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.
    b.  A determination by the Commissioner of Insurance that the continuation of the Policy coverage would place the Insurer in violation of California law or the laws of the state where the Insurer is domiciled or would threaten the Insurer's solvency.

3.  The Insurer will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the **Corporation** at the mailing address shown in the Policy and to the producer of record at least:

    a.  10 days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or
    b.  30 days before the effective date of cancellation if the Insurer cancels due to a determination by the Commissioner of Insurance that the continuation of the Policy coverage would place the Insurer in violation of California law or the laws of the state where the Insurer is domiciled or would threaten the Insurer's solvency.

4.  If the Insurer elects not to renew this Policy, the Insurer will mail or deliver written notice stating the reason for non-renewal to the **Corporation** and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date. The Insurer will mail or deliver the notice to the **Corporation** and to the producer of record at the mailing address shown in the Policy.

5.  The Insurer is not required to send notice of non-renewal in the following situations:

    a.  If the transfer or renewal of a Policy, without any changes in terms, conditions, or rates, is between the Insurer and a member of their insurance group.
    b.  If the Policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **4.** prior to the extension.
    c.  If the **Corporation** has obtained replacement coverage, or if the **Corporation** has agreed, in writing, within 60 days of the termination of the Policy, to obtain that coverage.
    d.  If the Policy is for a period of no more than 60 days and the **Corporation** is notified at the time of issuance that it will not be renewed.
    e.  If the **Corporation** requests a change in the terms or conditions or risks covered by the Policy within 60 days of the end of the **Policy Period**.

Case: 17-04020     Doc# 7     Filed: 04/21/17     Entered: 04/21/17 16:56:00     Page 30 of 37

This endorsement, effective 12:01 am, 03/24/2016 forms part of

Policy number:     NY16DOLV02898NV

Issued to:          Independent Adoption Center

By:                Navigators Insurance Company

      f.   If the Insurer has made a written offer to the **Corporation**, in accordance with the time frames shown in Paragraph 4., to renew the Policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

All other terms and conditions of this Policy remain unchanged.

This endorsement, effective 12:01 am, 03/24/2016 forms part of

Policy number:   NY16DOLV02898NV

Issued to:   Independent Adoption Center

By:   Navigators Insurance Company

## SUBLIMIT ENDORSEMENT FOR EXCESS BENEFIT TRANSACTION EXCISE TAX CLAIMS

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

In consideration of the premium paid for this policy, it is agreed that under the Directors & Officers Liability Coverage Part, Section II. Definitions is hereby amended as follows:

1. The following definition is added:

   "**Excess Benefit Transaction Excise Tax Claim**" means any **Claim** based upon, arising out of, related to, directly or indirectly resulting from, or in any way involving any excise tax  imposed by the Internal Revenue Service, pursuant to  Section 4958(a)(2) of the Internal Revenue Code, 26 U.S.C. 4958(a)(2), on an **Insured Person** as a result of such Insured Person's participation in an excess benefit transaction as defined in Section 4958(c) of the Internal Revenue Code, 26 U.S.C. 4958(c)

2. Subsection E. definition of "**Loss**" is hereby deleted in its entirety and replaced by the following:

   **E.** For purposes of this Coverage Part, the term "**Loss**" will include pre-and post-judgment interest and any "**Excess Benefit Transaction Excise Tax Claim**".  "**Loss**" shall not include:

   1. any portion of damages, judgments or settlements arising out of any **Claim** alleging that the **Company** paid an inadequate price or consideration for the purchase of the **Company's** securities;

   2. any costs or fees incurred by the **Company** to comply with an order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief, or any costs or fees awarded in connection with such compliance or agreement;

   3. any amount not indemnified by the **Company** for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order;

   4. any amount incurred by an **Insured** in the defense of investigation of any action, proceeding or demand that is not then a **Claim** even if (a) such amount also benefits the defense of a covered **Claim**, or (b) such action, proceeding or demand subsequently gives rise to a **Claim**;

   5. any amount allocated to non-covered loss.

   With respect to any **Claim** arising out of any Public or Private Offering of Securities of the **Company**, the Insurer shall not assert that the portion of any settlement and/or **Costs of Defense** of that **Claim** which relates to any alleged violations of Section 11 or 12 of the Securities Act of 1933, as amended, constitutes uninsurable loss and shall treat that portion of such settlement and/or **Cost of Defense** as constituting **Loss** under the Policy.

All other terms and conditions of this Policy remain unchanged.

Case: 17-04020    Doc# 7    Filed: 04/21/17    Entered: 04/21/17 16:56:00    Page 32 of 37

This endorsement, effective 12:01 am, 03/24/2016 forms part of

Policy number:  NY16DOLV02898NV

Issued to:  Independent Adoption Center

By:  Navigators Insurance Company

## ABUSE/MOLESTATION CLAIMS EXCLUSION ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Applicable to all Coverage Parts, the following exclusion is added:

In consideration of the premium paid for this policy, it is agreed that the Insurer will not be liable to make any payment of any **Loss** in connection with any **Claim** made against any **Insured** based upon, arising out of, relating to, directly or indirectly resulting from, or in any way involving any actual, alleged, attempted, proposed or threatened sexual molestation, abuse, assault and battery, whether or not intentional, of any person.

All other terms and conditions of this Policy remain unchanged.

This endorsement, effective 12:01 am, 03/24/2016 forms part of

Policy number:      NY16DOLV02898NV

Issued to:          Independent Adoption Center

By:                 Navigators Insurance Company

## SPECIFIC CIRCUMSTANCES EXCLUSION ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Applicable to all Coverage Parts, the following exclusion is added:

In consideration of the premium paid for this policy, it is agreed that the Insurer will not be liable to make any payment of any **Loss** in connection with any **Claim** made against any **Insured** based upon, arising out of, relating to, directly or indirectly resulting from, or in any way involving the following:

CDSS complaint investigation 26-CR-20160111131339

All other terms and conditions of this Policy remain unchanged.

This endorsement, effective 12:01 am, 03/24/2016 forms part of

Policy number:     NY16DOLV02898NV

Issued to:             Independent Adoption Center

By:                         Navigators Insurance Company

## ABSOLUTE PROFESSIONAL SERVICES EXCLUSION WITH MANAGEMENT CARVEBACK ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

In consideration for the premium paid for this policy, it is agreed and understood that:

In consideration of the premium paid for this Policy, it is understood and agreed that Section III. Exclusions of the DIRECTORS AND OFFICERS LIABILITY Coverage Part, is amended to add the following exclusion:

based upon, arising out of, relating to, directly or indirectly resulting from, or in any way involving rendering or failing to render any Professional Services.

Provided, however, this Exclusion shall not be applicable to any Claim made against any Insured which alleges a failure to supervise or manage those who performed or failed to perform such Professional Services.

It is further agreed that the following is added to Section II. Definitions of the DIRECTORS AND OFFICERS LIABILITY Coverage Part,:

Professional Services will mean services provided that are either:

paid for on a fixed fee basis, by hourly or retainer fee, or any combination; or

pro bono or for free.


All other terms and conditions remain the same.



All other terms and conditions of this Policy remain unchanged.

Case: 17-04020    Doc# 7    Filed: 04/21/17    Entered: 04/21/17 16:56:00    Page 35 of 37

# OFAC ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### U.S. ECONOMIC AND TRADE SANCTIONS LIMITATIONS CLAUSE

No Insurer shall be deemed to provide cover and no insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that Insurer to any sanction, prohibition or restriction under the trade or economic sanctions, laws or regulations of the United States of America.

The United States of America trade or economic sanctions, laws or regulations shall include, but not be limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms, conditions and exclusions of this Policy remain unchanged.

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $0.00, and does not include any charges for the portion of losses covered by the United States government under the Act.

YOU SHOULD ALSO KNOW THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER YOUR POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE YOUR COVERAGE. THE PORTION OF YOUR PREMIUM ATTRIBUTABLE TO SUCH COVERAGE IS SHOWN ABOVE.

If you have any questions about this notice, please contact your agent or Broker.

Contains copyrighted material of the National Association of Insurance Commissioners